487 So.2d 1 (1986)
In re INQUIRY CONCERNING a JUDGE, JUDGE LEONARD A. DAMRON.
No. 67151.
Supreme Court of Florida.
April 10, 1986.
On Request for Suspension December 19, 1985.
Kathleen Phillips, Chairman, Pensacola, John S. Rawls, Gen. Counsel, Tallahassee, and Marvin E. Barkin and Terrance A. Bostic, Special Counsel of Trenam, Simmons, Kemker, Scharf, Barkin, Frye and O'Neill, Tampa, for The Judicial Qualifications Com'n, petitioner.
Daniel S. Dearing of Dearing and Smith, Tallahassee, for respondent.

ON REQUEST FOR SUSPENSION
PER CURIAM.
This cause is before the Court upon the request of the Judicial Qualifications Commission to suspend with pay the respondent, Judge Leonard A. Damron, pending this Court's disposition of the proceedings in which the Commission has formally recommended to this Court that Leonard A. Damron be removed as a county court judge for Citrus County, Florida.
We find that public confidence in the administration of justice will best be served by respondent's suspension with pay, pending this Court's disposition of the Commission's recommendation that he be removed permanently from office. The merits of this case have been set for argument before this Court on January 8, 1986.
In accordance with our finding, we grant the Judicial Qualifications Commission's request for suspension with pay of the respondent, Leonard A. Damron, as a county court judge of Citrus County, Florida, until further order of this Court. This suspension with pay shall be effective at 12:01 a.m. on December 20, 1985.
It is so ordered.
BOYD, C.J., and OVERTON, McDONALD, EHRLICH, SHAW and BARKETT, JJ., concur.
ADKINS, J., dissents.

OPINION
PER CURIAM.
This proceeding is before the Court upon a report of the Judicial Qualifications Commission recommending the removal of respondent, Judge Leonard A. Damron, from his position as county court judge for Citrus County, Florida. The Commission *2 found that respondent has willfully and persistently refused to perform the duties of his office and to conform his conduct to the standards required of the judiciary. We have jurisdiction. Art. V, § 12, Fla. Const. We approve the Commission's findings and agree with its recommendation that respondent be removed from office.
The Commission, in its formal proceedings, charged respondent with fourteen counts of misconduct. It dismissed one count, found him guilty on nine counts, and not guilty on four counts. The circumstances of each of the nine charges for which he was found guilty, the contentions of the respondent, and the conclusions of the Commission are set forth below.

Charge I:
In February, 1984, respondent orally sentenced a defendant, Ms. Moody, to serve three consecutive six-month sentences; however, the written sentencing order reflected that he sentenced Moody to serve three consecutive one-year sentences. In July or early August, respondent had several conversations with Moody relating to her early release and, during one of the conversations, suggested that she write a letter to the Citrus County Chronicle concerning her rehabilitation. The following day Moody wrote a letter, which she showed to respondent and then mailed to the newspaper. The letter, in part, said: "I want to thank Judge Leonard A. Damron for setting me straight... . In all due respect, thank you, Judge Damron, for helping me to get my life on the right track." The letter was published in the Citrus County Chronicle shortly before the contested election for respondent's county judge position took place. After publication of the letter, the St. Petersburg Times reported that respondent had asked Moody to write the letter. The election, which respondent won, was held on September 12, 1984. On November 13, 1984, respondent entered an order in which, on his own motion, he reopened Moody's case, set aside his previous order, terminated Moody's jail sentence, and placed her on probation for the balance of her sentence. The Commission, in its findings, recognized that respondent was required to enter an order correcting Moody's inaccurate sentence, resolving the conflict between the oral sentence imposed and what appeared in the written sentencing judgment.
Respondent testified that he did not read the portion of the letter which praised him, that he considered the letter to be Christian "testimony," not a letter of political support, and that, at the time he read the letter, he believed it would not be published because the Chronicle did not publish letters with political content in the period immediately preceding an election.
The Commission resolved all conflicts in the testimony against respondent, finding that his testimony was "so inconsistent with other circumstances and evidence and is so inherently contradictory to other sworn testimony of respondent that the testimony of the respondent on this issue must be rejected as unworthy of belief." The Commission concluded that respondent had solicited a political favor by a promise of a judicial act, in violation of Canons 1, 2(A), and 3(A) of the Code of Judicial Conduct.

Charge II:
The record reflects that a defendant, who was before respondent for violation of probation based on his failure to pay fines and costs, advised respondent that he was unemployed and inquired as to whether he would need the services of an attorney. The transcript reveals the following colloquy:
DEFENDANT: Am I going to need a lawyer?
JUDGE DAMRON: Yes, that's right. You can have an attorney if you want, and that way I can give you two years. You want me to get you a public defender?
DEFENDANT: No, sir.
JUDGE DAMRON: I didn't think you did. I didn't know how he could prove that you didn't  that you paid your fine.
.....

*3 JUDGE DAMRON: Okay, give him a total, please, of what he's going to owe. See, sir, I don't mind appointing you a public defender, but, you know, he is not going to do a thing in the world but get you a lot of time because I told you before what to expect. There is no way that he could help you one bit.
.....
DEFENDANT: Would there be any time involved in this once everything is paid off?
.....
JUDGE DAMRON: If you want to go to a jury trial for not paying your fine, it would be. The taxpayers won't pay for something that's so foolish.
Respondent argues in his response that the defendant had an attorney, although the attorney was not present, and that, contrary to the defendant's assertion, the defendant was employed.
The Commission concluded that respondent intended to discourage the defendant from seeking an attorney's services by threatening the defendant with a substantial period of incarceration, in violation of Canons 2(A) and 3(A) of the Code of Judicial Conduct.

Charge III:
The record reflects that in May, 1984, Mr. Hunt, who was a litigant in a civil matter in respondent's court, had complied with and paid a court judgment in a small claims case. As a result of Hunt's compliance, respondent had dismissed the cause. The adverse party moved to have the judgment vacated, and a hearing on that motion was set for September 13, 1984, the day after the election in which respondent was a candidate. The Commission found that Hunt displayed a sign supporting respondent's opponent at Hunt's place of business, and that respondent had visited Hunt at his store on the Saturday preceding the election and expressed displeasure that Hunt was supporting his opponent. Respondent then reminded Hunt that Hunt had a case coming up before him and advised Hunt that if Hunt supported the wrong candidate, Hunt should be prepared to face the consequences. The day after the election, respondent granted the motion to vacate and entered an order setting aside the order of dismissal, then recused himself from the case. Respondent told the Commission that he based his action in part upon conversations with his wife regarding rumors as to Hunt's honesty.
Respondent argues in response that he expressed "surprise," rather than displeasure, at Hunt's demonstration of support for respondent's political opponent. He further argues that legal justification existed for the granting of the motion and emphasizes that the successor judge subsequently ruled in favor of Hunt's adversary on the merits of the matter.
The Commission concluded that respondent took judicial action against Hunt for personal political gain, in violation of Canons 1, 2(A), and 3(A) of the Code of Judicial Conduct.

Charge IV:
This count relates to a case in which a Mrs. Arnold was charged with interference with child custody. After discussing the circumstances of the case with her counsel, she filed a written plea of not guilty and demanded a jury trial. She testified before the Commission that respondent told her she would receive the maximum sentence upon conviction if she persisted in her plea of not guilty. She then changed her plea to nolo contendere solely in order to avoid the possibility of receiving the maximum sentence. Her husband testified that he was upset with the events relating to his wife's case; that he went to the clerk's office in the courthouse in order to obtain the court file; that, while in the clerk's office, he criticized respondent; that he received a telephone call from a person who identified himself as Judge Damron and who advised Mr. Arnold that he was aware Arnold was making derogatory remarks about him, then threatened Arnold with contempt of court and told him he had fifteen seconds to decide if he wanted his wife's sentence vacated and, if so, he had better get a good lawyer. Arnold also *4 testified that he met with the respondent the next day in respondent's chambers, at which time respondent repeated the statements.
Respondent testified that he did not specifically remember the conversation, although he admitted it could have taken place. He argues in this proceeding that Arnold's testimony is not credible and that the record contains insufficient competent evidence to estabilsh that these conversations occurred.
The Commission concluded that respondent acted in an undignified, discourteous, and threatening manner toward Arnold, in violation of Canons 1 and 3(A) of the Code of Judicial Conduct.

Charge V:
A defendant appeared before respondent for violation of probation based upon his failure to pay a fine and his arrest on unrelated charges. At the probation revocation hearing, respondent advised the defendant that his recent arrest on unrelated charges was the basis of the probation violation. The following exchange took place:
JUDGE DAMRON: I am going to sentence you to six months in the county jail. What I am going to do is change that form  that this other, you know, the (inaudible) ...
DEFENDANT: I don't see how you got  I don't see how my probation could be violated because 
JUDGE DAMRON: James, you were charged again for a crime. It's on your probation papers. I didn't charge you for not paying your fine because you were in jail at that time.
.....
DEFENDANT: So I'm going to get me six months for just being arrested.
JUDGE DAMRON: That's what the state law says, if you don't like it, you should talk to your legislator.
.....
DEFENDANT: One of them was one thing, and you're changing it to another.
JUDGE DAMRON: I can change it. I'm the judge.
DEFENDANT: All right.
JUDGE DAMRON: I can reduce it to a lesser plea, I can change the statute, right now it's being done, that's why I done it in open court so a lot of people hear it.
After protesting respondent's actions, the defendant requested the services of an attorney and the following exchange took place:
DEFENDANT: There ain't no way this can be continued until someone gets here?
JUDGE DAMRON: It's not going to help you any, James. You could have a dozen lawyers and you can't tell me you haven't been arrested. Can you?
Respondent then continued the hearing without granting the defendant's request for an attorney.
Respondent argues that he told the defendant that he was changing the basis for his probation violation from failure to pay the monthly installment on his fine to having been arrested for felonies. His authority was a provision of the probation order itself. He asserts that the portion of the record that says, "I can reduce it to a lesser plea," should read, "I can reduce it or change it to a lesser included." He further asserts that he gave the defendant an option to purge his six-month jail sentence by paying his fine and that the defendant's case was later reopened and the six-month sentence was reduced to 60 days. Respondent also notes that the defendant had previously waived counsel. Finally, he urges this Court to view his comment concerning "a dozen lawyers" as a gratuitous remark that, although unnecessary and unfortunate, does not justify his removal.
The Commission concluded from the record that respondent intentionally threatened this defendant, in violation of Canons 2(A) and 3(A) of the Code of Judicial Conduct.

*5 Charge VI:

Respondent adjudicated guilty a defendant who had pled nolo contendere to a charge of driving while under the influence of alcohol and ordered him to pay approximately $545 in fines and court costs, to attend driver improvement school, and to complete 50 hours of community service; in addition, he was sentenced to serve a term of probation for one year and his driving privileges were revoked for six months. Approximately three weeks after he imposed this sentence, respondent set aside the conviction upon an oral ex parte motion by counsel representing the defendant. No notice was given to the state attorney, nor was any written motion filed. Approximately five months later, the circuit court entered an order reinstating the original judgment and sentence and declaring void all orders entered by respondent after the date of the original judgment and sentence.
Respondent admitted before the Commission that he had had ex parte conversations with the defendant's attorney regarding the setting aside of the conviction. He testified that the attorney advised him that affidavits would be filed to support the motion. Although respondent admits that he engaged in ex parte communication with the defendant's attorney pertaining to the setting aside of this conviction, he attempts to justify it by arguing that, in a rural county with a heavy county court docket and no full-time assistant state attorney, this type of communication is common and does not offend the Canons of Judicial Conduct or the criminal justice system. Respondent further suggests that he should not be responsible for the defense attorney's failure to present a written motion.
The Commission concluded that respondent set aside the conviction without motion or notice and engaged in ex parte communications in violation of Canons 1, 2(A), and 3(A) of the Code of Judicial Conduct.

Charge VII:
The Commission charged that the incidents and comments attributable to respondent in the specific charges prove that respondent, as a matter of course, engaged in ex parte communications with parties, attorneys, and citizens concerning matters pending before his court. The Commission noted that respondent did not deny the accuracy of a newspaper article which reported that respondent appreciated having individuals provide him with information concerning the parties appearing before him. Respondent argues that this charge simply duplicates the preceding charges, and also contends that a rural county court judge should be held to different standards than the judges of the courts of more populous counties. The Commission determined that adequate evidence existed to find that respondent routinely engaged in ex parte communications, in violation of Canon 3(A) of the Code of Judicial Conduct.

Charge VIII:
The Commission charged respondent with routinely threatening individuals who requested the services of an attorney with substantial periods of incarceration. Respondent argues that the evidence presented does not evince a policy of discouraging criminal defendants and civil litigants from seeking legal representation. The Commission found the record established a routine pattern of conduct which violates Canons 2(A) and 3(A) of the Code of Judicial Conduct.

Charge IX:
This concerns an incident in which a defendant was charged with battery and criminal mischief relating to a domestic quarrel. The complainants, who were the defendant's mother- and father-in-law, had brought charges against the defendant. When they were informed that respondent had dismissed all charges against the defendant, they attempted to discuss the matter with him. The complainants testified that, when they asked respondent about the matter, he threatened them with contempt and imprisonment for questioning his authority.
Respondent argued that this incident was the result of a misunderstanding and involved *6 no misconduct on his part. He explained that the complainants' daughter had reconciled with the defendant and had advised respondent that she would not press charges against him. Respondent argues that he dismissed only the charges filed by the daughter and did not dismiss the felony charges filed by the complainants.
The Commission rejected respondent's assertion that the conversation never took place and found that respondent acted in a threatening manner toward the complainants, in violation of Canons 1, 2(A), and 3(A) of the Code of Judicial Conduct.

Recommended Discipline
The basis for the recommendation that respondent be removed from office is fully articulated by the Commission in its report as follows:
The record, including the particular instances proved or admitted, respondent's general conduct of his office, and his testimony and demeanor as a witness evidencing his total lack of appreciation for the responsibilities of that office, demonstrates respondent's present unfitness to continue as a county judge. Respondent fails to understand or follow the standards applicable to the conduct of his office. He has demonstrated a lack of understanding of the limits on the power of his office and has acted beyond and without jurisdiction. He has seriously disregarded the rights of litigants. His testimony before the Commission was inconsistent, inaccurate and in many instances inherently improbable and knowingly false; it squarely conflicted in many instances with the testimony of witnesses whom the Commission believes to be truthful; respondent's demeanor in response to many inquiries was not only unconvincing but evasive; and he could not or would not explain or justify many of his actions. All of this is independent evidence of unfitness. Moreover, he generally failed to acknowledge the seriousness and gravity of his admitted conduct; and with limited exceptions, demonstrated no contrition for his abuses. In sum, the evidence demonstrated respondent's willful and persistent refusal to perform the duties of his office and to conform his conduct to the standards required of a member of the judiciary.
In reaching these conclusions, the Commission has considered the principle that a judge should observe high standards of conduct so that the integrity and the independence of the judiciary may be preserved. He should conduct himself at all times in a manner that promotes public confidence in the integrity and the impartiality of the judiciary. Respondent has failed to conform to these standards.
Further, the Commission has considered the principle that conduct unbecoming a member of the judiciary may be proven by major incidents which indicate such conduct or by evidence of an accumulation of small or otherwise innocuous incidents which, considered together, show a pattern of conduct unbecoming a member of the judiciary. The Commission has found the presence of both the major incidents and an accumulation of smaller incidents in this case.
Finally, the Commission has considered the contention that respondent has always acted with proper intentions. The Constitution, as amended, in Article V, § 12(f) provides: "Malafides, scienter or moral turpitude ... shall not be required for removal from office of a ... judge whose conduct demonstrates a present unfitness to hold office." Nevertheless, were such required, the Commission has found adequate and sufficient evidence of malafides and scienter in the instant case, based on the proof introduced against respondent and his own testimony and demeanor. While respondent has argued, in substance, that no one was harmed by his actions, the Commission further finds to the contrary that all of the complainants were harmed to some extent by the actions of the respondent and, more significantly, that the very system of which respondent and this Commission are a part is itself irreparably *7 damaged by the opprobrium that his conduct has brought upon the judiciary.
Under these circumstances, it is the opinion of the Commission that the discipline of a reprimand alone would be insufficient. Respondent has demonstrated a lack of familiarity or concern with the Code of Judicial Conduct and the other standards regulating the conduct of his office, notwithstanding some 26 years on the bench. In view of his lack of contrition and demonstrated present unfitness, the Commission believes that no discipline short of removal from office will adequately punish the offenses in question and protect the public.

Conclusion:
We find the record contains substantial evidence supporting the Commission's factual findings that Judge Damron abused the authority of his office for personal political gain; improperly used the authority of his office to discourage defendants from exercising constitutional rights; considered ex parte communications in making a specific judicial decision; granted an ex parte request to set aside a DUI conviction without notice to the state; and misused his judicial authority in threatening litigants who complained about his conduct. In addition to these specific matters, the record also supports the Commission's findings that respondent routinely discouraged litigants from seeking legal representation and engaged in ex parte communications with parties, attorneys, and citizens concerning matters before his court for resolution. Equally important to the issue of removal is the Commission's finding that the judge's testimony was "inconsistent, inaccurate, and, in many instances, inherently improbable and knowingly false," and that "respondent's demeanor in response to many inquiries was not only unconvincing but evasive; and he could not or would not explain or justify many of his actions."
We agree with the Commission's findings and recommended discipline. We hold that respondent's conduct demonstrates a present unfitness to hold office and we conclude that removal is the only sanction that will adequately protect the public and ensure the integrity of the judicial process. Accordingly, Judge Leonard A. Damron is hereby removed from the office of county court judge for Citrus County, Florida, effective on the date this opinion becomes final.
It is so ordered.
BOYD, C.J., and OVERTON, EHRLICH, SHAW and BARKETT, JJ., concur.
McDONALD, J., concurs in part and dissents in part with an opinion, in which ADKINS, J., concurs.
McDONALD, Justice, concurring in part and dissenting in part.
I agree with the majority opinion that Judge Damron has violated the judicial code of ethics. As disturbing as his acts are, however, I cannot agree that they demonstrate a present unfitness to hold office or that removal from office is required or indicated. I believe that a public reprimand, coupled with the humiliation of being found guilty of violating the code of judicial ethics, is adequate punishment. I believe that with this punishment Judge Damron would resolve to, and then dedicate himself to, faithfully performing the duties of county judge. Hence, I concur in the finding of misconduct in office, but dissent to the punishment.
ADKINS, J., concurs.